Mark F. Magnozzi, Esq. (mm-0693)
MAGNOZZI & KYE, LLP
1 Expressway Plaza, Suite 114
Roslyn Heights, New York 11577
(P) – 516-299-5556
(F) – 516-299-5598

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(TRENTON)

---

GENERAL ELECTRIC CAPITAL CORPORATION, )
                                         Plaintiff, )   Case No.

-against-

ONCOLOGY ASSOCIATES OF OCEAN COUNTY LLC, )   **COMPLAINT**
MICHAEL J. MARCHESE, BARBARA SCHNEIDER,
PARVEZ DARA and STEWART A. BERKOWITZ,

                                      Defendants.

---

Plaintiff, General Electric Capital Corporation ("GE Capital" or "Plaintiff"), by way of Complaint against defendants Oncology Associates of Ocean County, LLC, Michael J. Marchese, Barbara Schneider, Parvez Dara and Stewart A. Berkowitz SAYS:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

2.    Venue is proper pursuant to 28 U.S.C. §1391(a).

## THE PARTIES

3.    General Electric Capital Corporation, is a Delaware corporation, authorized to do business in the State of New Jersey and maintaining an office for the transaction of business at 20225 Watertower Boulevard, Brookfield, Wisconsin.

4. Upon information and belief, defendant Oncology Associates of Ocean County, LLC ("Oncology") was and is a domestic limited liability company, duly organized and existing under the laws of the State of New Jersey, and maintaining an office for the transaction of business at 19 Mule Road, Toms River, NJ 08755.

5. Upon information and belief, defendant Michael J. Marchese ("Marchese") was and is a resident of the State of New Jersey, residing at 44 Lakeshore Drive, Red Bank, NJ 07701.

6. Upon information and belief, defendant Barbara Schneider ("Schneider") was and is a resident of the State of New Jersey, residing at 9 Hospital Drive, Toms River, NJ 08755.

7. Upon information and belief, defendant Parvez Dara ("Dara") was and is a resident of the State of New Jersey, residing at 214 Commons Way, Toms River, NJ 08755.

8. Upon information and belief, defendant Stewart A. Berkowitz ("Berkowitz") was and is a resident of the State of New Jersey, residing at 89 Knob Hill Road, Morganville, NJ 07751.

## GENERAL ALLEGATIONS

**Master Lease Agreement – Contract # 8532038**

9. On or about January 22, 2004, Oncology delivered to GE Capital a Master Lease Agreement (the "Lease Agreement"). The Lease Agreement contained the general terms governing those lease transactions, which were contemplated to be entered into by the parties. Among other things, the Lease Agreement provided that GE Capital would lease to Oncology, and Oncology would lease from GE Capital, all equipment and other property described in a separate Schedule signed by both parties.

2

A copy of the Lease Agreement is annexed hereto as Exhibit "A" and is incorporated herein by reference.

10. To induce GE Capital to enter into any promissory notes, security agreements and lease agreements, and/or any other documents or instruments relating to any lease or loan with Oncology, defendants Marchese, Schneider, Dara and Berkowitz (Marchese, Schneider Dara and Berkowitz shall collectively be referred to as the "Guarantors") each executed a Guaranty (the "Guarantees"), whereby, they each irrevocably and unconditionally, guaranteed to GE Capital the due regular and punctual payment of any sum or sums of money which Oncology, then or thereafter owed to GE Capital. Pursuant to the terms of the Guarantees the maximum liability of each Guarantor was capped at $475,000.00. Copies of the Guarantees are collectively annexed hereto as Exhibit "B".

11. The Lease Agreement provided, <u>inter alia</u>, that the lessee was to make monthly lease payments as they came due in the respective schedules and that an event of default would occur if such payment was not made and was not cured within ten (10) days of the breach.

12. That in the event of default, GE Capital could, among other things, (i) declare the aggregate rents payable under any and all Schedules to the Lease Agreement immediately due and payable and (ii) and take possession of any leased equipment and remove same from its present location.

13. Further that Oncology would be obligated to pay a late charge of five (5) cents per dollar for all amounts owed beyond the ten (10) day time to cure and would be obligated for all costs of collection or any other expenses incurred in GE Capital's

enforcement or preservation of its rights under the Lease Agreement including but not limited to actual attorneys' fees incurred.

14. In connection with the Lease Agreement, Oncology entered into two (2) equipment schedules, the terms for which are set forth in the succeeding paragraphs.

**Schedule #8532038 – Varian Linear Accelerator**

15. On or about January 22, 2004, Oncology entered into an equipment schedule designated contract Schedule #8532038 ("Schedule #1"). Pursuant to the terms of Schedule #1, Oncology agreed to lease from GE Capital a Varian Linear Accelerator (the "Varian") for a period of eighty-four (84) months, payable as follows: one (1) month advanced rental of $23,428.43 and eighty-three (83) months of $23,428.43 per month, plus all applicable taxes. A copy of Schedule #1 with amendments is annexed hereto as Exhibit "C".

16. Although the Varian was to be leased equipment and GE Capital was to remain the titled owner, out of an abundance of caution, GE Capital filed a UCC-1 Financing Statement with the Secretary of State for the State of New Jersey. A copy of the UCC-1 filing is annexed hereto as Exhibit "D".

17. In accordance with the Lease Agreement, lease payments were to commence on the date when Lessee accepted the Varian.

18. Oncology accepted delivery of the Varian and commenced making payments under the Lease Agreement and Schedule #1 on March 15, 2005.

19. Oncology defaulted under the terms of Schedule #1 and the Lease Agreement by failing to make payment of the January 1, 2010 installment or any additional installments which came due.

4

20. As a result of the default, on March 4, 2010, GE Capital gave written notice to Oncology and the Guarantors of the default and made demand upon Oncology and the Guarantors to cure the default. A copy of the notice of default is annexed hereto as Exhibit "E".

21. Despite due demand, Oncology and the Guarantors failed and refused to cure the default.

22. GE Capital has performed all of its obligations under the Lease Agreement and Schedule.

23. By reason of Oncology's default under the Lease Agreement and Schedule #1 and its failure to cure same there is presently due and owing to GE Capital, the sum of $853,427.52 together with interest, costs and attorneys' fees.

**Security Agreement**

24. As additional consideration and to secure the obligations and liabilities of Oncology to GE Capital, on or about February 5, 2004, Oncology delivered to GE Capital a Security Agreement (the "Security Agreement") pursuant to which it granted to GE Capital a security interest in:

> All now or hereafter acquired equipment fixtures, inventory, general intangibles, accounts, contract rights, chattel paper and instruments, securities, investment property, deposit accounts, letter of credit rights, computer equipment, machinery, tools, furniture together with all additions, attachments and accessions and all cash and non-cash proceeds (collectively the "Collateral").

A copy of the Security Agreement is annexed hereto as Exhibit "F" and is incorporated herein by reference.

25. GE Capital perfected its interest in the Collateral with the filing of a UCC-1 Financing Statement with the Secretary of State of New Jersey. A copy of the UCC-1 is annexed hereto as Exhibit "G".

**Schedule #8534498 – Goldseal Lightspeed QX/i**

26. On or about September 13, 2004, Oncology entered into a second equipment schedule designated contract Schedule #8534498 ("Schedule #2"). Pursuant to the terms of Schedule #2, Oncology agreed to lease from GE Capital a Goldseal Lightspeed QX/i with Oncology Package, RIT imaging equipment and other medical equipment, furniture and computer equipment (the "Goldseal Equipment") for a period of eighty-seven (87) months, and agreed to pay eighty-seven (87) consecutive monthly payments, as follows: three (3) months at $0.00, twelve (12) months at $9,364.24, and seventy-two (72) months at $10,333.46 per month, plus all applicable taxes. A copy of Schedule #2 is annexed hereto as Exhibit "H".

27. Although the Goldseal Equipment was to be leased equipment and GE Capital was to remain the titled owner, out of an abundance of caution, GE Capital filed a UCC-1 Financing Statement with the Secretary of State for the State of New Jersey. A copy of the UCC-1 Financing Statement filing is annexed hereto as Exhibit "I".

28. In accordance with Schedule #2, lease payments were to commence on the date when Lessee accepted the Goldseal Equipment.

29. Oncology accepted delivery of all of the Goldseal Equipment and commenced making payments on October 1, 2004.

30. Oncology defaulted under the terms of Schedule #2 and the Lease Agreement by failing to make payment of the January 1, 2010 installment or any additional installments which came due.

6

31. As a result of the default, on March 4, 2010, GE Capital gave written notice to Oncology and the Guarantors of the default under Schedule #2 and made demand upon Oncology and the Guarantors to cure the default. A copy of the notice of default is annexed hereto as Exhibit "E".

32. Despite due demand, Oncology and the Guarantors failed and refused to cure the default.

33. GE Capital has performed all of its obligations under the Lease Agreement and Schedule #2.

34. By reason of Oncology's default under Schedule #2 and its failure to cure same there is presently due and owing to GE Capital, the sum of $301,974.54 together with interest, costs and attorneys' fees.

35. In addition, GE Capital is entitled to a judgment of possession of the Goldseal Equipment.

**Security Agreement 2**

36. Although GE Capital already maintained a blanket lien on the assets of Oncology, as further additional consideration and to further secure the obligations and liabilities of Oncology to GE Capital, on or about June 23, 2004, Oncology delivered to GE Capital a Security Agreement (the "Security Agreement") pursuant to which it granted to GE Capital a security interest in:

> All now or hereafter acquired equipment fixtures, inventory, general intangibles, accounts, contract rights, chattel paper and instruments, securities, investment property, deposit accounts, letter of credit rights, computer equipment, machinery, tools, furniture together with all additions, attachments and accessions and all cash and non-cash proceeds (collectively the "Blanket Lien").

A copy of the Security Agreement is annexed hereto as Exhibit "J" and is incorporated herein by reference.

37.     GE Capital perfected its interest in the Blanket Lien with the filing of a UCC-1 Financing Statement with the Secretary of State of New Jersey. A copy of the UCC-1 Financing Statement filing is annexed hereto as Exhibit "K".

## FIRST CLAIM
### (Breach of Contract Against Oncology)

38.     GE Capital repeats, reiterates and realleges each and every allegation of contained in the paragraphs of this complaint marked "1" through "37" with the same force and effect as though more fully set forth herein at length.

39.     The failure of Oncology to pay the monthly installments which came due under Schedule #1 and Schedule #2 constitutes a breach of the Lease Agreement.

40.     As a result of Oncology's breach of the Lease Agreement, Schedule #1 and Schedule #2, GE Capital has sustained damages in an amount not less than $1,155,402.06, plus interest, late charges, attorneys' fees, costs and expenses.

41.     Accordingly GE Capital is entitled to judgment against Oncology in the amount of $1,155,402.06, plus interest, late charges, attorneys' fees, costs and expenses.

## SECOND CLAIM
### (Replevin of Oncology Assets)

42.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs of this complaint marked "38" through "41" with the same force and effect as though more fully set forth herein at length.

8

43. Pursuant to the terms of the Lease Agreement, upon an event of default, GE Capital is entitled to, *inter alia*, take possession of the leased equipment, including but not limited to the Varian and the Goldseal Equipment.

44. Additionally, pursuant to the terms of the Security Agreements, upon Oncology's default of any obligation owed to GE Capital, GE Capital has the right to take possession of all of the Collateral pledged to GE Capital as security for the repayment of the Oncology obligations.

45. As set forth above Oncology defaulted on the repayment of Schedules #1 and #2.

46. Accordingly, GE Capital is entitled to the immediate possession of the all of the Collateral (as defined in the Security Agreements), including the Varian and the Goldseal Equipment.

## THIRD CLAIM
### (Breach of Guaranty Against The Guarantors)

47. Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs of this complaint marked "42" through "46" with the same force and effect as though more fully set forth herein at length.

48. The failure of the Guarantors to cure the defaults of Oncology constitutes a breach of the Guarantors obligations under the Guarantees.

49. As a direct result of each of the Guarantors defaults, GE Capital has suffered damages in an amount not less than $1,155,402.06, plus interest, late charges, attorneys' fees, costs and expenses.

50. Accordingly GE Capital hereby requests entry of a judgment against each of the Guarantors in the amount of $475,000.00.

**WHEREFORE**, General Electric Capital Corporation prays for judgment as follows:

(a) on the first claim for Breach of Contract against Oncology Associates of Ocean County LLC in the amount of $1,155,402.06, plus interest, late charges, attorneys' fees, expenses, costs and any other amounts due under the Lease Agreement; and,

(b) on the second claim for Replevin against Oncology Associates of Ocean County LLC for immediate possession of the Collateral, including the Varian and the Goldseal Equipment; and,

(c) on the third claim for Breach of Guaranty against Michael J. Marchese, Barbara Schneider, Parvez Dara and Stewart A. Berkowitz, each in the amount of $475,000.00; and,

(d) awarding to GE Capital such further relief as this Court may deem just and proper.

Dated: April 16, 2010

                                          MAGNOZZI & KYE, LLP
                                        Attorneys for Plaintiff

By:   /s/ Mark F. Magnozzi
       Mark F. Magnozzi, Esq. (mm-0693)
       1 Expressway Plaza, Suite 114
       Roslyn Heights, New York 11577
       (P) - 516-299-5556
       (F) - 516-299-5598

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated:   April 16, 2010

                                                    MAGNOZZI & KYE, LLP
                                                    Attorneys for Plaintiff

                                    By:   /s/ Mark F. Magnozzi
                                                Mark F. Magnozzi, Esq. (mm-0693)
                                                1 Expressway Plaza, Suite 114
                                                Roslyn Heights, New York 11577
                                                (P) - 516-299-5556
                                                (F) - 516-299-5598