NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, | |
| Plaintiff, | |
| v. | Civil No. 10-1972 (AET) |
| ONCOLOGY ASSOCIATES OF OCEAN COUNTY LLC, et al., | **OPINION** |
| Defendants. | |

THOMPSON, U.S.D.J.

I.  INTRODUCTION

This matter comes before the Court on Defendants Barbara Schneider and Oncology Associates of Ocean County's ("Oncology Associates") (collectively, "OAOC") objections to Magistrate Judge Tonianne J. Bongiovanni's Report and Recommendation [Docket #44] regarding Defendants' motion to stay proceedings and for equitable relief. [47]. Defendants OAOC have subsequently filed a Motion to Strike Co-Defendant Dr. Berkowitz's Reply Brief [52] and a Motion for a New Hearing and Immediate Stay to Conduct Discovery into Improper Stealth Agreement Between Co-Defendant Berkowitz and Plaintiff General Electric Capital Corporation ("GECC") [54]. Plaintiff opposes these motions. [47], [56]. The Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court denies Defendants OAOC's Motion for a New Hearing, disregards Dr. Berkowitz's Reply Brief, adopts Magistrate Judge Bongiovanni's August 22, 2011 Report and Recommendation, and denies Defendants' motion to stay [27].

1

II.        BACKGROUND

A detailed factual background of this case is set forth in Magistrate Judge Bongiovanni's Report and Recommendation, and need not be repeated here.  In brief, this matter arises out the purported failure of OAOC to make payments for its use of certain medical devices including the Varian Linear Accelerator (the "Varian") and a Goldseal Lightspeed QX/I with Oncology Package (the "Goldseal") pursuant to the terms of the Master Lease Agreement ("MLA") and attendant schedules entered into by OAOC and GECC.

Under the terms of the MLA, in the event of a default, GECC could, among other things, (1) declare the aggregate rents payable under any and all schedules to the MLA immediately due and payable, (2) take possession of any leased equipment, and/or (3) remove such equipment from its present location.  (*See* MLA ¶ 9(b), Compl. Ex. 1) [1-1].

On April 16, 2010, after several monthly payments in arrears, GECC initiated the instant litigation against OAOC and other named defendants for breach of contract [1].  Shortly thereafter, on June 1, 2010, GECC filed a motion for replevin to exercise its rights under paragraph 9(b)(iv) of the MLA to take possession of the Varian and Goldseal devices [13]. Although the parties attempted settlement negotiations, ultimately these settlement discussions broke down and GECC renewed its request for an order of replevin.  (R&R, at 3–4).  Magistrate Judge Bongiovanni instructed OAOC to respond to GECC's request for replevin.  (*Id.* at 4). OAOC responded by filing a motion to stay proceedings and for appropriate equitable relief [27].

On May 25, 2011, Magistrate Judge Bongiovanni held an evidentiary hearing on GECC's request for replevin, as well as OAOC's counter-motion for a stay.  In the process of that proceeding Dr. Berkowitz, a co-guarantor on the note that is secured by the equipment and an individual defendant in the breach of contract action, participated in the hearing and gave

2

testimony. After the hearing closed, the parties were directed to submit closing briefs. GECC and OAOC submitted closing briefs. Dr. Berkowitz did not submit a brief.

On August 22, 2011, Magistrate Judge Bongiovanni issued a report and recommendation that GECC's motion for replevin be granted. On September 13, 2011, OAOC submitted objections to the report and recommendation. Despite not filing an initial brief, on September 27, 2011, Dr. Berkowitz submitted a "reply brief" arguing in support of GECC's position [50]. In response, on October 3, 2011, OAOC moved to strike Dr. Berkowitz's reply [52]. Dr. Berkowitz opposed this motion [53]. Before the briefing schedule for the motion to strike was completed, on October 21, 2011 OAOC filed a Motion for a New Hearing and Immediate Stay to Conduct Discovery into the allegedly "Improper Stealth Agreement Between Co-Defendant Berkowitz and Plaintiff GECC." Dr. Berkowitz [55] and GECC [56] have separately filed oppositions to this motion.

### III.   MOTION TO STRIKE

OAOC has moved to strike Dr. Berkowitz's reply brief and accompanying attachments. For the reasons that follow, this Court will disregard the arguments advanced in Dr. Berkowitz's reply brief as well as the accompanying attachments in reviewing the Magistrate Judge's Report and Recommendation.

It is axiomatic in federal practice that arguments raised for the first time in a reply brief should be disregarded. This is so because the local rules do not permit the filing of sur-reply briefs and thus the non-moving party has "no opportunity to respond to newly minted arguments contained in reply briefs." *See Bayer AG & Bayer Corp. v. Schein Pharm.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001), *aff'd* 301 F.3d 1306 (3d Cir. 2002); L.Civ.R. 7.1(d)(6). Although Dr. Berkowitz contends that OAOC's motion papers and brief fail to identify any rule, statute or

decisional law barring the filing made by Dr. Berkowitz, (Dr. Berkowitz Opp'n, at 2), the Court finds that the pleading violates the scheduling order set by the Magistrate Judge as well as local rules. Far from being a traditional reply brief, Dr. Berkowitz advances several new arguments and introduces new documentation which was not included in the evidentiary hearing. Additionally, Dr. Berkowitz's participation in the hearing did not put the opposing party on notice that he intended to advance his own theories as to GECC's entitlement to replevin. Indeed, a review of the May 25, 2011 transcript suggests that Dr. Berkowitz's testimony was much more limited in scope than the arguments presented in the reply brief. (*See* Tr. 70–79). While under Fed. R. Civ. P. 12(f), the court can strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," the Court believes it should simply "disregard" the Berkowitz submissions. *See Lombard v. MCI Telecomms. Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998). Accordingly, this Court will disregard the reply and the attached certification and exhibits.

      IV.      <u>MOTION FOR NEW HEARING AND STAY TO CONDUCT DISCOVERY</u>

Having held that the arguments advanced by the Dr. Berkowitz reply are not properly before the Court, the Court will deny OAOC's Motion for a New Hearing and Immediate Stay to Conduct Discovery into the allegedly "Improper Stealth Agreement Between Co-Defendant Berkowitz and Plaintiff GECC."

In its papers OAOC contends that "[b]y allowing Berkowitz to participate as a party in the replevin proceedings where he had no standing and never sought intervention was an error and provided a gateway for GECC and Berkowitz to capitalize on their secret alliance to the substantial prejudice of OAOC." (Defs.' Mot. for New Hr'g, at 9). As an initial matter, this Court is unpersuaded by the standing argument advanced by OAOC. While GECC has not sued

4

the individual guarantors for replevin, the guarantors have a personal stake in the outcome of the replevin proceeding as they each have guaranteed the liability of OAOC to GECC.  To the extent that GECC is not able to take possession of the medical devices and recoup some of its damages, GECC can seek to enforce the full amount owed under the guarantees against each guarantor.  Therefore, the individual guarantors conceivably have an interest in GECC's being able to mitigate the amounts owing under the guarantees, thus reducing the individual guarantor's liability.  Because the resolution of the replevin motion is likely to have a substantial impact on the individual guarantors, this Court finds that the individual guarantors have a cognizable interest in the replevin proceedings.

With regard to OAOC's contention that it has been prejudiced by Dr. Berkowitz's participation in the replevin proceedings, this Court does not believe that OAOC has established any fraud, misrepresentation, or misconduct on the part of Dr. Berkowitz or GECC that would warrant a new hearing on the underlying Report & Recommendation.  The Court does not credit OAOC's assertion that "[t]here is every indication of some form of stealth arrangement between the plaintiff and this co-defendant."  (*Id.* at 10).  Though the Court notes the procedural deficiencies of Dr. Berkowitz's reply brief, the Court finds that OAOC has not been prejudiced by Dr. Berkowitz's participation in the underlying replevin proceedings.   Indeed, OAOC had the ability to cross-examine Dr. Berkowitz and in fact did. (*See* Tr. 74–79; 81).  Even assuming, *arguendo*, that Dr. Berkowitz was motivated by a "personal agenda," (Defs.' Mot. for New Hr'g, at 10), a review of the transcript suggests that there was nothing "stealth" about this purported interest.  Indeed, OAOC continuously alluded to Dr. Berkowitz's potential adverse interest during the hearing.  *See, e.g.*, Tr. 52: 4–6 ("[S]o we're clear, when [Dr. Berkowitz] made those contacts to you, you were aware he had a competing radiation center?"); Tr. 105: 21–24 ("I want

to make sure we're absolutely clear, there's no question in your mind that the facility that Dr. Berkowitz operates and is a member of is a competitor of the facility that you're testifying about here today, right?"); *see also* Tr. 199: 6–8 ("When Dr. Berkowitz left the practice, he . . . siphoned off quite a few referrals."). In any event, given the limited nature of Dr. Berkowitz's testimony, this information would not have been material to the Court's review of the motion for replevin/motion for stay.

## V.  MOTION FOR REPLEVIN/MOTION TO STAY

Under Rule 72(b) and 28 U.S.C. § 636(b)(1), a district court must engage in de novo review where a party has objected to a magistrate judge's decision. *See* Fed. R. Civ. P. 72(b)(3). The term "de novo" signifies that a magistrate judge's findings are not protected by the clearly erroneous doctrine, but does not indicate that a second evidentiary hearing is required. *See United States v. Raddatz*, 417 U.S. 667 (1980). In determining whether to accept, reject, or modify a magistrate judge's recommended decision, a district court judge must look at all of the evidence contained in the record. The district judge may (1) accept, reject, or modify the recommended decision; (2) receive further evidence; or (3) recommit the matter to the magistrate judge with instructions. *See* Fed. R. Civ. P. 72(b). If the Court accepts a Report and Recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a de novo review of the record and adopts the Report and Recommendation. *See* 12 Fed. Prac. & Proc. Civ. § 3070.2 (2d ed.). For the reasons listed below, this Court adopts and modifies the Report and Recommendation.

OAOC raises eleven objections to the Report and Recommendation: first, that the Magistrate Judge employed the incorrect definition of fixtures—one that has been abrogated by statute since 1986; second, that the Magistrate Judge erroneously concluded that the machinery

6

in issue are not fixtures; third, that the Magistrate Judge credited testimony of witnesses who candidly admitted having no knowledge of the relevant facts; fourth, that the Magistrate Judge erroneously concluded that the institutional doctrine is no longer operative in New Jersey; fifth, that the Magistrate Judge incorrectly imported tax law to determine real property common law; sixth, that the Magistrate Judge incorrectly apportioned the burden of proof; seventh, that the Magistrate Judge incorrectly determined intent and ignored the interests of the mortgagee; eighth, that the Magistrate Judge failed to join a necessary party; ninth, that the Magistrate Judge's commercial reasonableness finding is unsupported by the record; tenth, the that the Magistrate Judge was immoderate in not ordering a lesser remedy at this juncture; eleventh, that the Magistrate Judge was remiss in not ordering GECC to post bond.  (Defs.' Opp'n, at 1–2).  The Court has reviewed those aspects of the Report and Recommendation to which Plaintiff objects and the underlying evidence in the record.  Having conducted this review under the de novo standard outlined above, the Court adopts the Magistrate Judge's final conclusion that replevin should be granted, but clarifies certain aspects of this decision.

Under New Jersey law, replevin is governed by N.J.S.A. 2B:50-1, *et seq*.  Pursuant to N.J.S.A. 2B:50-1, "[a] person seeking recovery of goods wrongly held by another may bring an action for replevin . . . .  If the person establishes the cause of action, the court shall enter an order granting possession."  Further, pursuant to N.J.S.A. 2B:50-2(a), the court may, prior to final judgment, "after notice and hearing, and based upon filed papers and testimony, if any . . . grant possession of the goods to the plaintiff" if it "finds a probability of final judgment for the plaintiff."  The Court finds that GECC has demonstrated a probability of final judgment.

Although OAOC has attempted to characterize this dispute as one centering on the changing definition of a fixture under New Jersey law, the Court finds that the Magistrate Judge

7

correctly determined that the medical devices at issue were not, and were never intended to be, fixtures to real property. Over the years, New Jersey has had a number of varying tests to determine whether a good constitutes a fixture. *See General Motors Corp. v. City of Linden*, 696 A.2d 683 (N.J. 1997). In concluding that the equipment were not fixtures, the Magistrate Judge relied upon the "material injury test" articulated in *City of Bayonne v. Port Jersey Corp.*, 399 A.2d 649 (1979). Under the "material injury test," a chattel is deemed a fixture if the removal of such chattel would cause "irreparable or serious physical harm to the freehold." *Id.* at 654. OAOC argues that the *Bayonne* "material injury test" was abrogated by statute in 1986 and that had the Magistrate Judge applied the statutory tax test for fixtures under N.J.S.A. 54:4-1, as interpreted by *City of Linden*, she would have been constrained to conclude based on the evidence that the machinery at issue are fixtures. (Defs.' Opp'n, at 6).

    Notwithstanding the Magistrate Judge's reliance upon the fixtures analysis in *City of Bayonne* and OAOC's interpretation of *City of Linden*, two cases dealing with the definition of real property for tax purposes, this Court finds persuasive GECC's position that, at best, the medical devices should be considered under the trade fixtures analysis provided under the Uniform Commercial Code. "Generally, what constitutes a trade fixture depends upon the facts of the particular case, but an article may generally be regarded as a trade fixture if it is annexed for the purpose of aiding in the conduct by the tenant of a calling exercised on the leased premises for the purpose of pecuniary profit." 36A C.J.S. Fixtures § 38b; *see also* 35Am. Jur. 2d Fixtures, § 3 (1965) (noting that a trade fixture is a separate class of goods brought onto real property by a tenant in order to carry on the business to which the real estate has been devoted). There can be no dispute that the medical devices were leased by GECC to OAOC for the purpose of aiding its business. New Jersey law recognizes that as a general rule, unless a contrary intent

8

is clear, items of commercial equipment, even if firmly attached to realty, may be removed by the owner at the expiration of a lease of the property, where removal may be accomplished without material injury to the freehold.  *See Sgro v. Getty Petroleum Corp.*, 854 F. Supp. 1164, 1179 (D.N.J. 1994).  Here, the Court finds that the expressed intent of the parties through the MLA and underlying agreements clearly establish that the devices were to remain GECC's personal property, removable at the direction of GECC not only at the end of the lease term, but in the event of any default.   (*See* MLA ¶ 9(b); ¶ 12(f) ("The equipment is and will remain tangible personal property"); Landlord Waiver and Consent Form, Exs. P-3, P-6 ("such collateral will not be deemed a fixture but shall at all times be considered personal property")); *see also* Tr. 10:19–11:13 (noting that the contract terms were designed to avoid allowing the GECC equipment to be considered a fixture); Tr. 11:15–12:5(noting the lease term between OAOC and its landlord provided that GECC could enter and remove its property):  Tr. 19:1–8 (noting that GECC has recovered CT machines at least 100 times in the last eight years); Tr. 21:13–21 (noting five instances of device removal)).

As a result, the Court finds that a "material injury test" was the appropriate test in deciding the motion.  Because OAOC had raised the fixture issue as an affirmative issue, the Magistrate Judge correctly noted that under New Jersey law, "[t]he burden of proof rests upon the party who asserts the affirmative of an issue.  Since [OAOC] asserts that the items in question are fixtures, it therefore has the burden of proving that they are."  (R&R, at 8 (citations omitted)).  The Court agrees that OAOC did not meet that burden.  Additionally, the Court finds no reason to question the Magistrate Judge's finding that OAOC did not present sufficiently credible evidence to suggest that removal of the Varian and Goldseal devices would cause "irreparable or serious physical injury or damage" to the cancer treatment facility or to contradict

9

Mr. Sharkey's testimony that removal of the devices could be reasonably accomplished and that that any damage done to the facilities could be reasonably repaired.[1]  *See United States v. Jennings*, 491 F. Supp. 2d 1072, 1075 (M.D. Ala. 2007) (noting that credibility findings of magistrate judge, who personally observed the testimony of live witnesses, may be accepted unless the district judge, in his or her de novo review, finds reason to question the magistrate judge's assessment of the evidence).

Nor does the Court find that the Magistrate Judge ignored the interest of the mortgagee or that the Magistrate Judge failed to join a necessary party.  Because it is clear that the Varian and the Goldseal devices do not constitute fixtures under real property common law, any purported mortgagee has no rights in the equipment and is not required to be joined in this action.  *See also* Landlord Waiver and Consent Form, Ex. P-3 ("Landlord hereby consents to [GECC's] security or ownership interest in the Collateral and disclaims all interests, liens and claims which Landlord now has or may hereafter acquire in the Collateral and agrees not to distrain or levy upon the collateral for any reason.")  Indeed, as the Landlord Waiver and Consent Form between OAOC and its landlord makes clear, GECC can enter and remove its property at any point.

Contrary to OAOC's assertion that in the Magistrate Judge committed error in concluding that removal was commercially reasonable (Defs.' Opp'n, at 23), the Court concludes that this finding was supported by the record.  Pursuant to N.J.S.A. 12A:9-610(a), "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing."

---

[1] Because the Court does not credit OAOC's contention that the devices should be considered fixtures and given the express terms of the lease as well as this Court's reading of N.J.S.A. 12A:9-604(d), the Court finds that GECC is not required to post bond under the circumstances.  *See* N.J.S.A. 12A:9-604(d) ("A person entitled to reimbursement *may* refuse permission to remove until the secured party gives adequate assurance for the performance of the obligation to reimburse.") (emphasis added).  Here, the Court finds that both the landlord and OAOC have already acceded to GECC's ability to remove its property.  The Court expects that GECC will promptly reimburse the relevant parties for any damages sustained by removal.

N.J.S.A. 12A:9-610(b) makes clear that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." When dealing with repossession, New Jersey courts have found that where the cost of repossessing collateral and preparing same for sale likely exceeds the price the secured party will obtain in selling the collateral, repossessing the collateral may not be commercially reasonable. *See First Fidelity Acceptance v. Hutchins*, 717 A.2d 437, 439 (N.J. Super. Ct. Law Div. 1998). While the valuation of collateral is always subject to uncertainty, the Court finds that GECC offered sufficient evidence to suggest that both the Varian and Goldseal devices would have substantial value if removed. (*See* R&R, at 10–11 (noting that if the Court relies on the low end of their resale value ranges, the Varian and Goldseal devices could be worth approximately $350,000 to GECC)).

  Although OAOC suggests that there are lesser remedies that will compensate GECC while allowing OAOC to continue in operation until this matter is resolved (Defs.' Opp'n, at 23), the Court is satisfied that replevin is appropriate at this juncture. GECC's repossession has been anything but immediate. Indeed, GECC's motion for replevin was filed over eighteen months ago. OAOC has known since that time that GECC could be granted permission to repossess the medical devices and could have accounted for such a contingency. And indeed, the Court notes that other than a few limited payments as part of the parties' settlement negotiations, OAOC has continuously failed to make payments that have come due since that time. To the extent that removing these machines will be "immediate, severe and irreversible," (*id*), the Court finds that this situation is the result of OAOC's own actions. While this Court is not unsympathetic to the circumstances of the OAOC employees who risk job loss in the face of a replevin order, this

11

Court also notes that GECC and its employees also have an interest in the excess of $1,000,000 deficiency that this Court cannot ignore.

### VI.   CONCLUSION

For the reasons set forth above, and for good cause shown, the Court adopts Magistrate Judge Bongiovanni's August 22, 2011 Report and Recommendation, as modified, and Defendants OAOC's Motion to Strike and Motion for a New Hearing are denied. An appropriate Order will be entered.

_/s/ Anne E. Thompson_____
ANNE E. THOMPSON, U.S.D.J.

Date: December _12_, 2011